IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RAYMOND LANCE BRIGGS, Individually and as Personal Representative of the Estate of KELSEY SHELTON SMITH-BRIGGS, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. CIV-06-677-M |
| THE STATE OF OKLAHOMA ex rel. THE OKLAHOMA DEPARTMENT OF HUMAN SERVICES et al., | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Plaintiff Raymond Lance Briggs, individually and as Personal Representative of the

Estate of Kelsey Shelton Smith-Briggs, deceased, filed this action on May 1, 2006, in the

District Court of Oklahoma County, Oklahoma, against defendants The State of Oklahoma

ex rel. The Oklahoma Department of Human Services ("DHS"), Howard H. Hendrick in his

official capacity as DHS Director, David Burgess, a DHS supervisor, in his individual

capacity, Kristal Johnson, a DHS social worker, in her individual capacity, Yolanda Hunter,

a DHS social worker, in her individual capacity, Youth and Family Resource Center, Inc.

("YF Resource Center"), Eastern Oklahoma Youth Services, Inc. ("EO Youth Services"),

Jean Bonner, an EO Youth Services case worker, in her individual capacity, and Carla

Lynch, in her individual capacity.  Briggs alleged that each defendant had failed to protect

against and prevent the continuous physical abuse of his daughter, Kelsey Shelton Smith-

Briggs ("Kelsey"), and that their failure to do so resulted in Kelsey's death.

DHS, Hendrick, Johnson, Hunter and Burgess removed the action on June 23, 2006, and alleged that this Court had jurisdiction over the subject matter under title 28, sections 1331 and 1343(a)(3) of the United States Code because Briggs had sought relief against certain defendants under federal law and, in particular, had sought to redress a deprivation of a right secured by the United States Constitution.

The matter now comes before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint filed pursuant to Rule 12(b)(6), F.R.Civ.P., by EO Youth Services and Bonner wherein they have challenged the allegations in the second amended complaint for failure to state claims upon which relief may be granted.  Briggs has responded, and the movants have filed a reply.  Based upon the record, the Court makes its determination.

It is not the objective of Rule 12(b)(6) to formulate issues for trial.  That function is discharged by pretrial discovery.  Furthermore, the Court's task at this stage "'is not to weigh potential evidence that the parties might present at trial,'" Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006)(quoting Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)), or decide whether Briggs will ultimately prevail against one or both defendants.  Rather, the Court's task is "'to assess whether . . . [Briggs' second amended] complaint alone is legally sufficient to state a claim for which relief may be granted.'"  Id. (quoting Sutton, 173 F.3d at 1236).

In so doing, the Court is mindful that "'all facts alleged in [Briggs' second amended] complaint are taken as true and all reasonable inferences are indulged in . . . [his] favor." Id. (quoting GF Gaming Corp. v. City of Black Hawk, 405 F.3d 876, 881 (10th Cir. 2005)). Dismissal as requested is appropriate only when "it appears beyond doubt that . . . [Briggs]

can prove no set of facts in support of . . . [his] claim[s] which would entitle . . . [him] to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(footnote omitted).

This lawsuit arises out of horrific acts of abuse.[1]  In his second amended complaint, Briggs has asserted multiple causes of action,[2] including two against EO Youth Services and two against Bonner.  In his fifth claim for relief, Briggs has sought damages against Bonner under state law for her alleged negligence, and in his sixth claim for relief, Briggs has contended that EO Youth Services is liable under the doctrine of respondeat superior for Bonner's alleged negligence.

In particular, Briggs has contended

(1) that on June 15, 2005, in a state court proceeding involving Kelsey, the District Court of Lincoln County, Oklahoma, ordered that community home based services ("CHBS") be provided through DHS;

(2) that pursuant to this court order, DHS contracted with EO Youth Services, described as "an independent contractor," Second Amended Complaint at 9, ¶ 28, to provide the same;

(3) that EO Youth Services through its agent and/or employee Bonner provided the CHBS program to Kelsey;

---

[1]As the parties are well aware of the events giving rise to this lawsuit, the Court finds it unnecessary to recite the factual background as set forth in the second amended complaint.

[2]In a seventh claim for relief, Briggs has sought an award of punitive damages against inter alios EO Youth Services and Bonner.

(4) that Bonner, both as an EO Youth Services employee and "as a person with knowledge that Kelsey was being abused," Second Amended Complaint at 15, ¶ 43, owed Kelsey a duty and that Bonner negligently breached that duty

(a) by failing to adequately investigate Kelsey's biological mother, Raye Dawn Smith, now Porter, and Kelsey's stepfather, Michael Porter;

(b) by failing to remove Kelsey and/or to recommend her removal from her mother's home "despite clear signs of continuing physical abuse," id.;

(c) by failing to report to DHS, the Lincoln County District Court or other authorities the injuries suffered by Kelsey;

(d) by failing to recognize the signs and symptoms of physical abuse as reported by Kelsey's paternal grandmother and other family members;

(e) by failing to take action on the day Kelsey died "despite clear signs of physical abuse," id.;

(f) by failing to properly investigate the activities of Smith and Porter; and

(g) by failing to protect Kelsey.

EO Youth Services and Bonner have argued that these two claims for relief are barred by the Oklahoma Governmental Tort Claims Act ("OGTCA" or "Act"), as amended, 51 O.S. § 151 et seq.  Tort actions against DHS are governed by the OGTCA,[3] which "redefined the parameters of governmental tort liability." Anderson v. Eichner, 890 P.2d 1329, 1336 (Okla. 1994)(emphasis deleted)(footnote omitted).  Under the Act, DHS employees acting within the scope of their employment are immune from suit. E.g., 51

---

[3]DHS's liability is "subject to the limitations and exceptions specified in th[e] Act," 51 O.S. § 153(A), and is "exclusive and in place of all other liability . . . ." Id. § 153(B).

4

O.S. §§ 152.1(A), 153(A).  EO Youth Services and Bonner have argued that they are "DHS employees" and thus, entitled to the same immunity afforded such employees.  EO Youth Services has further argued that it is immune because it also qualifies as a "state agency."

The Act defines the term "employee" as

"any person who is authorized to act in behalf of . . . the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis."

51 O.S. § 152(5).

The term

"[e]mployee also includes . . . other persons designated to act for a[] [state] agency . . . , but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor[.]"

Id. § 152(5)(a)(1).

The term "agency" is statutorily defined as

"any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state . . . ."

Id. § 152(2).

Bonner and EO Youth Services have argued that not only the statutory definitions of "employee" and "agency," respectively, are met in this instance, but also that case law definitions of the same are satisfied.  In this connection, EO Youth Services and Bonner have argued that since DHS was statutorily authorized to implement and develop community-based services, e.g.,10 O.S. § 7004-2.1A,[4] and referred Kelsey to EO Youth

_____

[4]Title 10, section 7004-2.1(A) of the Oklahoma Statutes provides in part

(a) that DHS "shall, to the extent of funds available, directly or by grant or contract, develop and implement a diversity of community-based services and

Services, EO Youth Services and Bonner as an employee of thereof were acting "in behalf of . . . the state." 51 O.S. § 152(5). EO Youth Services has further contended that it clearly falls within the expansive definition of "agency" since it provided services under the direction of and in conjunction with DHS–services specifically and legislatively authorized. E.g., 10 O.S. § 7004-2.1(A).

In examining the phrase "designated to act in behalf of," the Oklahoma Supreme Court found that this statutory language "is not so clear as to be beyond interpretation." Sullins v. American Medical Response of Oklahoma, Inc., 23 P.3d 259, 263 (Okla. 2001). "[B]ecause it is susceptible to multiple interpretations," id., the Oklahoma Supreme Court in deciding its meaning looked to various sources, including the statutory definition of agency itself and found that that term included only those entities that were "organized to execute a governmental function or a division of governmental administration." Id. The Court finds the same analysis applies in this case.

"Notwithstanding the fact that it may be providing a public service, a private entity such as . . . [EO Youth Services] does not act in the administration of government. It is not charged by law with the responsibility of conducting any public business," id. at 264, and it is well settled that for purposes of the OGTCA, a private entity does not become an "agency" and is not "designated to act in behalf of the state" merely because it contracts

community-based care for children who are alleged or adjudicated deprived[;]" and

(b) that DHS "is authorized to contract with any federal, state, local or tribal governmental agency or with any qualified private person, association or agency to develop, administer, coordinate or provide community-based services and community-based care."

10 O.S. § 7004-2.1(A).

with a state agency to provide services the state agency is statutorily authorized to provide. E.g., id. Accordingly, at this stage of the litigation and absent a complete presentation of the evidence, the Court finds that EO Youth Services does not assume the status of a state agency, the liability of which is "subject to the limitations and exceptions specified in th[e] Act." 51 O.S. § 153(A).

As stated, EO Youth Services and Bonner have also argued that they are DHS employees entitled to immunity under the OGTCA, and in support of their argument, they have relied upon those factors listed by the Oklahoma Supreme Court in determining whether an employer-employee relationship existed at the time the events occurred giving rise to the lawsuit. In Swafford v. Sherwin Williams, 863 P.2d 1215 (Okla. 1993), the court identified eleven relevant factors but noted that "[n]o one factor is controlling, and the relationship must be based on the set of facts peculiar to the case." Id. at 1217 (citation omitted).

Absent proof of the facts deemed relevant by the parties, the status of EO Youth Services and Bonner as employees or as an independent contractor and the employee of an independent contractor, respectively, cannot be decided at this stage of the litigation. The OGTCA expressly excludes independent contractors and their employees from the definition of employee, e.g., 51 O.S. § 1525(a)(1), and in light of this legislative intent "to exclude public contractors from the immunity provisions of the [O]GTCA," 23 P.3d at 264 (footnote omitted), the Court finds that until these defendants' status is resolved that

7

discussion of the immunity provided by the OGTCA, e.g., 51 O.S. § 152.1(A); id. § 153(A), to employees is premature.[5]

EO Youth Services and Bonner, who as stated has been sued in her individual capacity, have argued that they are also entitled to dismissal of Briggs' third claim for relief because it fails to state a claim against them upon which relief may be granted. This cause of action is based upon an alleged violation of Kelsey's right to substantive due process as guaranteed by the fourteenth amendment to the United States Constitution. Briggs has sought to redress this alleged deprivation of Kelsey's constitutional right to due process under title 42, section 1983 of the United States Code.[6]

---

[5]The Court does note that EO Youth Services' reliance on title 10, section 7003-2.5 of the Oklahoma Statutes is misplaced and that this statute provides no immunity from liability under the circumstances of this case as alleged in the second amended complaint.

[6]Section 1983 provides that every person who acts under color of state law to deprive another of a constitutional right shall be liable in a suit for damages. "'"[M]erely private conduct, no matter how discriminatory or wrongful,"'" American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 50 (1999)(quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)(quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)))(footnote omitted), is beyond the reach of this statute. Nevertheless, private parties such as EO Youth Services and Bonner under certain circumstances can act "under color of state law" and thus, can be held liable under section 1983 as state actors. E.g., Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).
The United States Supreme Court has recognized four tests for determining whether particular private conduct constitutes state action. E.g., Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). "Under each . . . , 'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" Id. at 1447 (quoting Lugar, 457 U.S. at 937).
It appears from the allegations in the second amended complaint, namely, that state actors Burgess, Johnson and Hunter together with Bonner "act[ed] in concert and under color of state law," Second Amended Complaint at 11, ¶ 33, that Briggs is relying on the joint action test. In this connection, "[s]tate action is . . . present if a private party is a 'willful participant in joint action with the State or its agents.'" Id. at 1453 (quoting Dennis v. Sparks, 449 U.S. 24, 27 (1980))(other citation omitted). "[T]he focus of this test is . . . whether state officials and private parties have acted in concert in effecting a

Liability cannot be imposed on an entity under section 1983 based on the doctrine of respondeat superior.  E.g., Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).  Thus, to the extent that Briggs has sought to impose liability on EO Youth Services based on Bonner's conduct, EO Youth Services is entitled to dismissal of this claim for relief.

As to Bonner, Briggs has alleged that she "failed to exercise professional judgment," Second Amended Complaint at 11, ¶ 31, and acted "with deliberate indifference and/or reckless disregard," id. at 9, ¶ 30,

(1) by failing to adequately investigate the background of Smith and Porter;

(2) by failing to properly investigate reports of suspected abuse;

(3) by discouraging the reporting of additional abuse;

(4) by failing to investigate other sources of information about Kelsey;

(5) by failing to cooperate with other entities and individuals involved with Kelsey;

(6) by failing to fully inform the District Court of Lincoln County, Oklahoma, about all issues material to Kelsey's abuse; and

(7) by failing to protect Kelsey.

In this connection, Bonner has argued that dismissal of the third claim for relief is warranted because she had no duty to guarantee Kelsey's safety while in the care of her family.  In Christiansen v. City of Tulsa, 332 F.3d 1270 (10th Cir. 2003), the United States

_____

particular deprivation of constitutional rights."  Id. (citations omitted).  Since no arguments have been advanced challenging or disputing the status of EO Youth Services and/or Bonner in connection with this claim for relief, the Court has deemed both defendants "state actors" for purposes of section 1983 and the instant request for dismissal.

Court of Appeals for the Tenth Circuit confirmed that "[n]ormally, 'state actors are liable only for their own acts, and not the violent acts of third parties.'" Id. at 1279 (quoting Armijo v. Wagon Mound Public Schools, 159 F.3d 1253, 1260 (10th Cir. 1998)).  The circuit court held that "'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" Id. (quoting DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 197 (1989)).

The Tenth Circuit in Christiansen also however confirmed the existence of two exceptions to this general rule:  the "special relationship" doctrine and the "danger creation" theory. Id. at 1279-80.  The "special relationship doctrine comes into play "'when the state [has] assume[d] control over an individual sufficient to trigger an affirmative duty to provide protection to that individual. . . .'"' Id. at 1280 (quoting Armijo, 159 F.3d at 1260 (quoting Liebson v. New Mexico Corrections Department, 73 F.3d 274, 276 (10th Cir. 1996))).  In this connection, "'the state must restrain[] an individual's freedom to act to protect . . . herself through a restraint on that individual's personal liberty.'" Id. (quoting Armijo, 159 F.3d at 1261).  "Absent involuntary restraint, . . . no duty to protect arises under the special-relationship theory[,]" id., because "'"[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on . . . [her] freedom to act on . . . [her] own behalf."'" Id. (quoting Armijo, 159 F.3d at 1261 (quoting DeShaney, 489 U.S. at 200)).

To state a claim for relief against Bonner for deprivation of substantive due process under the "special relationship" doctrine, Briggs must allege for purposes of Rule 12(b)(6) an affirmative act of restraint of Kelsey's personal liability by Bonner because it is the state official's act of restraint that "trigger[s] the protections of the Due Process Clause, not [the

10

state official's] . . . failure to act to protect . . . [Kelsey's] liberty interests against harms inflicted by other means." DeShaney, 489 U.S. at 200 (footnote omitted).

In the absence of both legal and physical custody, no special relationship exists, and thus, no attendant affirmative duty to protect exists. E.g., DeShaney, 489 U.S. at 199-200. Conversely, in those situations where the state has both legal and physical custody, a special relationship exists that imposes such a duty on the state. E.g., Yvonne L. v. New Mexico Department of Human Services, 959 F.2d 883 (10th Cir. 1992)(state has constitutional duty to protect foster child in its legal and physical custody).

In this case, Briggs has alleged in her second amended complaint that while Smith had physical custody, DHS had legal custody of Kelsey, and Briggs has argued that DHS's continuing legal custodial relationship with Kelsey is sufficient to establish a duty to protect under this theory as against Bonner.  The Court disagrees.

"[L]egal custody without physical custody is insufficient to create a 'special relationship.'" A.S. v. Tellus, 22 F. Supp.2d 1217, 1221 (D. Kan. 1998); e.g., Wooten v. Campbell, 49 F.3d 696 (11th Cir. 1995)(no special relationship where state has legal custody, mother has physical custody and child injured by natural father); Clark v. City of Philadelphia, 2006 WL 2321574 (E.D. Pa. August 8, 2006)(absent physical custody, no special relationship exists).  Accordingly, absent persuasive and relevant case law to the contrary, the Court finds under the circumstances of this case that Briggs' third claim for relief to the extent, if any, it is based upon the special relationship doctrine fails to state a claim for which relief may be granted.[7]

---

[7]Such findings would likewise be applicable to EO Youth Services, and it too is entitled to dismissal of the third claim for relief to the extent, if any, this claim is based

The second exception to the general rule, as indicated, is the "danger creation" theory. Under this theory, "'state officials can be liable for the acts of third parties where those officials "created the danger" that caused the harm.'" Christiansen, 332 F.3d at 1281 (quoting Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996)). It is not enough under the danger creation theory to show that a state actor may have been aware of the danger with which an individual was confronted; a plaintiff must show that the state actor played a part in the creation of the danger or rendered that individual more vulnerable to the danger.

The Tenth Circuit has devised a six-part test to be employed when considering danger creation claims. As applied to this case, Briggs

> "'must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased . . . [Kelsey's] vulnerability to the danger in some way; (2) [Kelsey] . . . was a member of a limited and specifically definable group; (3) defendants' conduct put [Kelsey] . . . at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.'"

Id. (quoting Gonzales v. City of Castle Rock, 307 F.3d 1258, 1263 (10th Cir. 2002), rev'd on other grounds, Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005)).

"'The Due Process Clause "is not a guarantee against incorrect or ill-advised [government] decisions."'" 332 F.3d at 1282 (quoting Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)(quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992))). "The danger creation theory . . . focuses on the affirmative actions of the state in placing . . . [an individual] in harm's way." Currier v. Doran, 242 F.3d 905, 919 (10th Cir. 2001)).

---

upon the special relationship doctrine.

The Court finds that Bonner's alleged failure to cooperate, investigate, inform and protect as set forth in the second amended complaint, while it may not have reduced the danger posed by Smith and/or Porter, did not create or enhance that danger or render Kelsey more vulnerable to abuse.  In this connection,  the Court finds that it is important to distinguish between official conduct that intentionally and/or recklessly creates or substantially contributes to the creation of danger and a failure to act that does not decrease or eliminate a pre-existing danger.

The absence of sufficient allegations concerning part one of the Tenth Circuit's six-part test renders a potential showing of all other factors irrelevant as to Bonner's liability based upon these allegations under the danger creation exception.  Accordingly, Bonner is entitled to dismissal of the third claim for relief to the extent it is based upon these allegations.[8]

As to Briggs' allegation that Bonner also discouraged reports of additional incidents of abuse, see Second Amended Complaint at 10, ¶ 30(b), the Court finds that it does not appear beyond doubt that Briggs cannot state a claim for relief based upon the same.  By allegedly discouraging reports of additional abuse, Bonner increased Kelsey's vulnerability to abuse.  E.g., Currier, 242 F.3d at 922.  Upon review of the second amended complaint, the Court finds that Briggs has sufficiently alleged at this stage of the litigation not only that such conduct put Kelsey in substantial risk of an obvious or known harm, a serious and immediate harm that Bonner consciously disregarded, but also that such conduct, when viewed in its totality, could be conscious shocking.  Accordingly, Bonner is not entitled to

---

[8]Again, to the extent, if any, Briggs has attempted to assert such a claim against EO Youth Services, it too fails.

dismissal for failure to state a claim for relief based upon this allegation under the danger creation exception.

Because the Court has determined that Briggs has sufficiently alleged a violation of the right to substantive due process guaranteed by the fourteenth amendment under the danger creation theory as against Bonner, the Court must consider the affirmative defense of qualified immunity raised by Bonner and her contention that she is immune from liability on this claim.[9]

"The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." Elder v. Holloway, 510 U.S. 510, 512 (1994). If a defendant asserts this defense, a plaintiff must show both that the defendant's actions violated a constitutional right and that the right allegedly violated was clearly established at the time the defendant acted. E.g., Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this connection, the Court must first decide whether the allegations taken in the light most favorable to Briggs show that Bonner's conduct violated a constitutional right. As stated, the Court has determined that the particular theory of the danger creation exception–discouraging reports of additional incidents of abuse, thereby rendering an individual more vulnerable to that abuse, constitutes a violation of the right to substantive due process.

---

[9]Briggs has not challenged Bonner's right to rely on the doctrine of qualified immunity; he has only contended that under the facts and circumstances of this case, she is not immune. See Rosewood Services, Inc. v. Sunflower Diversified Services, Inc., 413 F.3d 1163 (10th Cir. 2005).

Accordingly, the Court must also then decide whether the contours of that right were "'sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the [United States] Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)(citation omitted).

DeShaney and its progeny clearly established prior to the events giving rise to this lawsuit that a state actor could be liable if his or her affirmative acts enhanced an individual's vulnerability to private violence.  Moreover, the particular application of the danger creation theory upon which Briggs has relied–discouraging reports of additional incidents of abuse, had been sufficiently recognized in Currier, decided by the Tenth Circuit in 2001, to provide "fair warning," Hope v. Pelzer, 536 U.S. 730, 740 (2002), to state actors that similar conduct could deprive an individual of a constitutional right.  Accordingly, the Court finds that a reasonable official in Bonner's position would have understood that her conduct could give rise to a claim under the danger creation theory.  Thus, Bonner is not entitled to qualified immunity on this claim.

Based upon the foregoing, the Court

(1) GRANTS the Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 35] filed on August 24, 2006, by defendants EO Youth Services and Bonner to the extent that these defendants

(a) have sought dismissal of the third claim for relief in its entirety as to EO Youth Services;

15

(b) have sought dismissal of the third claim for relief to the extent, if any, it is based upon the special relationship theory of liability and Briggs' attempt to impose liability under that theory on Bonner; and

(c) have sought dismissal of the third claim for relief to the extent it is based upon the danger creation theory of liability and Briggs' attempt to impose liability under that theory on Bonner based upon allegations that she failed to inform, protect, investigate and cooperate; and

(2) DENIES the Motion to Dismiss Plaintiff's Second Amended Complaint to the extent

(a) Bonner has sought dismissal of those allegations that she discouraged reports of additional incidents of abuse in the third claim for relief asserted under the danger creation theory of liability and Briggs' attempt to impose liability under that theory on her;

(b) Bonner has sought a finding by the Court that she is entitled to qualified immunity on that theory of liability; and

(c) EO Youth Services and Bonner have sought dismissal of the fifth and sixth claims for relief.

ENTERED this 31st day of January, 2007.

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE