IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RAYMOND LANCE BRIGGS, Individually and as Personal Representative of the Estate of KELSEY SHELTON SMITH-BRIGGS, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. CIV-06-677-M |
| THE STATE OF OKLAHOMA ex rel. THE OKLAHOMA DEPARTMENT OF HUMAN SERVICES et al., | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Raymond Lance Briggs, individually and as Personal Representative of the Estate of Kelsey Shelton Smith-Briggs, deceased, filed this action on May 1, 2006, in the District Court of Oklahoma County, Oklahoma, against defendants The State of Oklahoma ex rel. The Oklahoma Department of Human Services ("DHS"), Howard H. Hendrick in his official capacity as DHS Director, David Burgess, a DHS supervisor, in his individual capacity, Kristal Johnson, a DHS social worker, in her individual capacity, Yolanda Hunter, a DHS social worker, in her individual capacity, Youth and Family Resource Center, Inc. ("YF Resource Center"), Eastern Oklahoma Youth Services, Inc. ("EO Youth Services"), Jean Bonner, an EO Youth Services case worker, in her individual capacity, and Carla Lynch, in her individual capacity. Briggs alleged that each defendant had failed to protect against and prevent the continuous physical abuse of his daughter, Kelsey Shelton Smith-Briggs ("Kelsey"), and that their failure to do so resulted in Kelsey's death.

DHS, Hendrick, Johnson, Hunter and Burgess removed the action on June 23, 2006, and alleged that this Court had jurisdiction over the subject matter under title 28, sections 1331 and 1343(a)(3) of the United States Code because Briggs had sought relief against certain defendants under federal law and, in particular, had sought to redress a deprivation of a right secured by the United States Constitution.

The matter now comes before the Court on the Motion to Dismiss Second Amended Complaint filed pursuant to Rule 12(b)(6), F.R.Civ.P., by DHS, Hendrick, Johnson, Hunter and Burgess wherein they have challenged the allegations in the second amended complaint for failure to state claims upon which relief may be granted. Briggs has responded, and the movants have filed a reply. Based upon the record, the Court makes its determination.

It is not the objective of Rule 12(b)(6) to formulate issues for trial. That function is discharged by pretrial discovery. Furthermore, the Court's task at this stage "'is not to weigh potential evidence that the parties might present at trial,'" Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006)(quoting Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)), or decide whether Briggs will ultimately prevail against one or more of the defendants. Rather, the Court's task is "'to assess whether . . . [Briggs' second amended] complaint alone is legally sufficient to state a claim for which relief may be granted.'" Id. (quoting Sutton, 173 F.3d at 1236).

In so doing, the Court is mindful that "'all facts alleged in [Briggs' second amended] complaint are taken as true and all reasonable inferences are indulged in . . . [his] favor." Id. (quoting GF Gaming Corp. v. City of Black Hawk, 405 F.3d 876, 881 (10th Cir. 2005)). Dismissal as requested is appropriate only when "it appears beyond doubt that . . . [Briggs]

can prove no set of facts in support of . . . [his] claim[s] which would entitle . . . [him] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(footnote omitted).

In his second amended complaint, Briggs has asserted multiple causes of action,[1] including two against DHS and/or Hendrick and one against Burgess, Johnson and Hunter. In his first claim for relief, Briggs has sought damages against DHS under state law for its alleged negligence. In particular, Briggs has contended that DHS through its agents and employees, Hendrick, Burgess, Johnson and/or Hunter,

(1) "failed and refused to adopt and/or implement policies and/or procedures to keep . . . Kelsey . . . free from physical neglect and abuse," Second Amended Complaint at 6-7, ¶ 18; and

(2) "failed and refused to approve appropriate program budgets, failed to allocate funding and failed to establish policies and/or procedures . . . which would have prevented the abuse, injuries, and ultimate death of Kelsey . . . ." Id. at 7, ¶ 19.

Briggs has further alleged that at all times relevant to this claim, Kelsey was in DHS custody and/or control, that Hendrick, Johnson, Hunter and Burgess were repeatedly notified about the injuries and abuse that Kelsey had suffered and that each had "failed and refused to take the appropriate action to place Kelsey . . . in a position where she was safe and free from physical abuse." Id. ¶ 20.

DHS has argued that it is entitled to dismissal because Briggs' claim against it is barred by the Oklahoma Governmental Tort Claims Act ("OGTCA" or "Act"), as amended, 51 O.S. § 151 et seq. Tort actions against DHS are governed by the OGTCA, which

---

[1] In a seventh claim for relief, Briggs has sought an award of punitive damages against inter alios Burgess, Johnson and Hunter.

"redefined the parameters of governmental tort liability." Anderson v. Eichner, 890 P.2d 1329, 1336 (Okla. 1994)(emphasis deleted)(footnote omitted).  Under the Act, DHS employees acting within the scope of their employment are immune from suit. E.g., 51 O.S. §§ 152.1(A), 153(A).  DHS's liability is "subject to the limitations and exceptions specified in th[e] Act," id. § 153(A), and is "exclusive and in place of all other liability . . . ." Id. § 153(B).

In seeking dismissal of Briggs' first claim for relief, DHS has relied upon four exceptions to liability set forth in the Act. Title 51, section 155(3) of the Oklahoma Statutes exempts state agencies from liability for any losses resulting from the "[e]xecution or enforcement of the lawful orders of any court . . . ." 51 O.S. § 1553(3).  As Briggs has alleged in the second amended complaint, "[p]ursuant to court order,[2] beginning March 16, 2005, Raye Dawn Smith[3] was allowed unsupervised visitation with Kelsey . . . . Within one week of these unsupervised visits, Kelsey . . . was abused." Second Amended Complaint at 4, ¶ 11.

Briggs has responded that this exemption is not applicable because his allegations of negligence against DHS are not based on the execution or enforcement of any court order, but rather on DHS's failure to properly investigate reports of continued abuse before judicial proceedings were initiated and also, after. See Plaintiff's Response at 3.

Title 51, section 155(4) of the Oklahoma Statutes, upon which DHS has also relied, exempts state agencies from liability for any losses resulting from the "enforcement of or

---

[2]The Orders to which Briggs has referred in his second amended complaint were issued by the District Court of Lincoln County, Oklahoma.

[3]Raye Dawn Smith, now Porter, is Kelsey's biological mother.

4

failure to adopt or enforce a law, whether valid or invalid, including but not limited to, any . . . written policy . . . ." 51 O.S. § 155(4). As stated, in his second amended complaint, Briggs has alleged that DHS through its director and/or employees "failed and refused to adopt and/or implement policies and/or procedures to keep . . . Kelsey . . . free from physical neglect and abuse." Second Amended Complaint at 6-7, ¶ 18.

Briggs has again contended that this exemption is not applicable in this instance. He has conceded that he alleged in his second amended complaint that DHS had failed to have in effect certain policies and procedures, but he has argued that the absence of such policies and procedures did not negate DHS's obligation to fulfill those duties it owed to Kelsey, including the duty to investigate reports of continued abuse. See Plaintiff's Response at 5.

The third potentially relevant exemption, title 51, section 155(5) of the Oklahoma Statutes, exempts state agencies from liability for any losses resulting from the "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state . . . or its employees[.]" 51 O.S. § 155(5). Briggs has sought to hold DHS liable "by and through its Director . . . [because it] failed and refused to approve appropriate program budgets, failed to allocate funding and failed to establish policies and/or procedures for . . . [DHS's] program and delivery service which would have prevented . . . [Kelsey's] abuse, injuries and ultimate death . . . ." Second Amended Complaint at 7, ¶ 19.

Although Briggs has admitted that matters of budget and funding are discretionary and that allegations concerning deficient funding asserted against policymakers arguably are barred by this exemption, he has again contended that section 155(5) does not bar his

allegations that DHS failed to adequately investigate reports of abuse. See Plaintiff's Response at 5.

Finally, DHS has relied upon title 51, section 155(28) of the Oklahoma Statutes, which exempts state agencies from liability for any losses resulting from "[a]ny claim based upon an act or omission of an employee in the placement of children[.]" 51 O.S. § 155(28). Briggs has contended in his first claim for relief as set forth in the second amended complaint that Hendrick, Johnson, Hunter and Burgess knew of the abuse that Kelsey had suffered and yet "each of them failed and refused to take appropriate action to place Kelsey . . . in a position where she was safe and free from physical abuse." Second Amended Complaint at 7, ¶ 20.

Briggs has again argued that this exemption is inapplicable because, despite the foregoing allegations, DHS has misconstrued the intent of the allegations against it. Briggs has asserted that he is not seeking to impose liability on DHS due to Kelsey's placement with her mother and/or stepfather, but rather due to DHS's failure to properly investigate reports of continued abuse and failure to take appropriate action to prevent further abuse based upon this investigation. See Plaintiff's Response at 6.

As shown by the statements in Briggs' response, Briggs' main protest and grievance against DHS is DHS's alleged negligent failure to adequately investigate reports of abuse. To the extent Briggs has sought to hold DHS liable based upon the same, the Court finds DHS is exempt under the OGTCA.

The Oklahoma Children's Code, 10 O.S. § 7001-1.1 et seq., imposes upon DHS the duty to investigate. In particular, title 10, section 7003-1.1(A)(1) of the Oklahoma Statutes provides that

> "[u]pon notification or receipt of a report that a child may be deprived[4] . . . , [DHS] . . . shall conduct an . . . investigation[5] in accordance with priority guidelines established by . . . [DHS]."

10 O.S. § 7003-1.1(A)(1).

The Oklahoma Child Abuse Reporting and Prevention Act, 10 O.S. § 7101 et seq., provides further that if DHS receives a child abuse report, it "shall promptly respond to the report by initiating an investigation[6] of the report . . . in accordance with priority guidelines established by . . . [DHS]."  10 O.S. § 7106(A)(1); e.g., id. § 7106(B) (DHS shall "complete a thorough investigation").

These statutes clearly require performance of mandatory acts, including the statutory obligations to conduct a proper and thorough investigation into, and to respond to, reports of child abuse.  DHS's alleged failure to enforce or comply with the state laws

---

[4]The term "deprived" as used in the Oklahoma Children's Code includes a child "whose home is an unfit place for the child by reason of neglect, abuse, cruelty, or depravity on the part of the child's parents, legal guardian, or other person responsible for the child's health or welfare[.]"  10 O.S. § 7001-1.3(A)(14)(b).

[5]The term "investigation" is statutorily defined as

"an approach utilized by . . . [DHS] to respond to reports of alleged child abuse or neglect which, according to priority guidelines established by . . . [DHS], constitute a serious and immediate threat to a child's health or safety.  An investigation includes, but is not limited to, the following elements:

    a. an evaluation of the child's safety,
    b. a determination whether or not child abuse or neglect occurred, and
    c. a determination regarding the family's need for prevention and intervention-related services."

Id. § 7001-1.3(A)(28).

[6]See 10 O.S. § 7102(B)(11).

associated with the investigation into reports of child abuse falls squarely within section 155(4) and its exemption for any losses resulting from the "failure to . . . enforce a law, whether valid or invalid, including but not limited to, any statute . . . ."  51 O.S. § 155(4). The intent and purpose of section 155(4) was the preservation of sovereign immunity against claims for losses resulting from a state agency's failure to enforce a law.  For this reason, Briggs' first claim for relief and the allegations set forth therein, which Briggs has argued are ultimately grounded on and arise from DHS's failure to investigate, are barred by section 155(4).

In his second claim for relief, Briggs has contended that Hendrick as DHS Director had

(1) "a duty to establish and implement system-wide guidelines, policies, and procedures within DHS and allocate appropriate funding for the investigation, oversight, supervision, and protection of children such as Kelsey . . . ," Second Amended Complaint at 8, ¶ 23, as well as

(2) "the duty to hire and maintain sufficient personnel to adequately carry out the services provided by DHS including, but not limited to the [aforementioned] mandated services . . . ." Id.

Briggs has contended that Hendrick negligently breached these duties, and Briggs has sought a declaration by the Court that DHS and/or Hendrick

> "failed to allocate necessary and adequate funding to its agencies and subsidiaries such that DHS, through its employees, was not able to meet regulatory and legislative requirements regarding appropriate supervision, protection and oversight of minors like Kelsey . . . who are in DHS custody."

Id. ¶ 25.

Hendrick has argued that he is entitled to dismissal of the second claim for relief which was brought under both title 12, section 1651 of the Oklahoma Statutes and title 28, section 2201 of the United States Code, because it presents no case or controversy in this instance and thus, is not justificiable.

In this connection, section 1651 provides that "[d]istrict courts may, in cases of actual controversy, determine rights, status, or other legal relations . . . provided however, that a court may refuse to make such determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding." 12 O.S. § 1651. The Oklahoma Supreme Court has stated that while section 1651 is "to be liberally construed to obtain the objective of expediting and simplifying the ascertainment of uncertain rights," Barzellone v. Presley, 126 P.3d 588, 592 n.16 (Okla. 2005), the appropriateness of declaratory relief is dependent "upon the existence of a justiciable controversy." House of Realty, Inc. v. City of Midwest City, 109 P.3d 314, 318 (Okla. 2004)(citations omitted). "The term 'justiciable' refers to a lively case or controversy between antagonistic demands," id. (citation omitted), and "[i]ncluded within the rubric of 'justiciability' is a controversy which is (a) definite and concrete, (b) concerns legal relations among parties with adverse interests and (c) is real and substantial so as be capable of a decision granting or denying specific relief." Application of State of Oklahoma ex rel. Department of Transportation, 646 P.2d 605, 609 (Okla. 1982)(footnote omitted).

Likewise, section 2201, the federal declaratory judgment statute, provides "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2001(a). The requirements of case or controversy are no less

stringent under section 2201(a) than in any other type of suit.  E.g.,  Altvater v. Freeman, 319 U.S. 359, 363 (1943).

Hendrick has argued that there is no case or controversy as to any future harm because Kelsey is deceased and Briggs, individually or as personal representative of Kelsey's estate, has no legally protectible interest which relates to the employment and/or training of DHS personnel or to the allocation of funds.  E.g., Presley, 126 P.3d at 592 n.16 (purpose of section 1651 is to provide the means to vindicate a judicially cognizable interest).

In response, Briggs has not challenged Hendrick's legal authorities or his specific arguments regarding the absence of a case or controversy in this instance.  He has instead contended only that issues of public importance such as the protection of children in DHS custody can satisfy the "case of controversy" requirement, relying on City of Oklahoma City v. Oklahoma City Urban Renewal Authority, 988 P.2d 901 (Okla. 1999).[7]

This lawsuit arises out of horrific acts of abuse.[8]  Nevertheless, Briggs' second claim for relief against Hendrick, regardless of the compelling public interest in preventing such

---

[7]In City of Oklahoma City v. Oklahoma City Urban Renewal Authority, 988 P.2d 901 (Okla. 1999), a case involving a challenge by taxpayers to a development agreement, the Oklahoma Supreme Court cited with approval a 1935 decision by the Idaho Supreme Court.  In that case, State ex rel. Miller v. State Board of Education, 56 Idaho 210, 52 P.2d 141 (1935), the Idaho Supreme Court was "confronted with the unusual and extraordinary situation of both appellant and respondents taking the same position in urging the validity of . . . [a legislative] act and the correctness of the judgment of the trial court." Id. at ___, 52 P.2d at 143.  The court advised that "[i]t [was] . . . only what seem[ed] to be the public importance of the matters involved and the exigencies of the situation that . . . induced [the court] . . . to consider th[e] appeal."  Id.

[8]As the parties are well aware of the events giving rise to this lawsuit, the Court finds it unnecessary to recite the factual background as set forth in the second amended complaint.

abuse, does not present a cause of action that is susceptible to a decision or to specific relief of a conclusive nature–one element of justiciability. Furthermore, while alleged past failure to allocate necessary and proper funding to state agencies or to employ a sufficient number of trained personnel may indicate under certain circumstances a threat of immediate and repeated harm, the threat to Briggs, individually or as personal representative of Kelsey's estate, posed by such failures in the future is not sufficiently concrete or real to support the existence of a present and live case or controversy. Thus, the Court finds Hendrick is entitled to dismissal of the second claim for relief.

Johnson, Hunter and Burgess, who, as stated, have been sued in their individual capacities, have argued that they are entitled to dismissal of Briggs' third claim for relief because it fails to state a claim against them upon which relief may be granted. This cause of action is based upon an alleged violation of Kelsey's right to substantive due process as guaranteed by the fourteenth amendment to the United States Constitution. Briggs has alleged that each of these three defendants[9] "failed to exercise professional judgment," Second Amended Complaint at 11, ¶ 31, and acted "with deliberate indifference and/or reckless disregard," id. at 9, ¶ 30,

(1) by failing to adequately investigate the background of Kelsey's mother, Raye Dawn Smith, now Porter, and stepfather, Michael Porter;

(2) by failing to properly investigate reports of suspected abuse;

(3) by discouraging the reporting of additional abuse;

---

[9]In this claim for relief, Briggs did not describe any individual acts on the part of these three defendants. Such blanket assertions of involvement and participation in the alleged deprivation will not survive a challenge under Rule 56, F.R.Civ.P.

(4) by failing to investigate other sources of information about Kelsey;

(5) by failing to cooperate with other entities and individuals involved with Kelsey;

(6) by failing to fully inform the District Court of Lincoln County, Oklahoma, about all issues material to Kelsey's abuse; and

(7) by failing to protect Kelsey.

In this connection, Hunter, Johnson and Burgess have argued that dismissal of the third claim for relief is warranted because they had no duty to guarantee Kelsey's safety while in the care of her family.  In Christiansen v. City of Tulsa, 332 F.3d 1270 (10th Cir. 2003), the United States Court of Appeals for the Tenth Circuit confirmed that "[n]ormally, 'state actors are liable only for their own acts, and not the violent acts of third parties.'" Id. at 1279 (quoting Armijo v. Wagon Mound Public Schools, 159 F.3d 1253, 1260 (10th Cir. 1998)).  The circuit court held that "'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" Id. (quoting DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 197 (1989)).

The Tenth Circuit in Christiansen also however confirmed the existence of two exceptions to this general rule:  the "special relationship" doctrine and the "danger creation" theory.  Id. at 1279-80.  The "special relationship doctrine comes into play "'when the state [has] assume[d] control over an individual sufficient to trigger an affirmative duty to provide protection to that individual. . . .'"" Id. at 1280 (quoting Armijo, 159 F.3d at 1260 (quoting Liebson v. New Mexico Corrections Department, 73 F.3d 274, 276 (10th Cir. 1996))).  In this connection, "'the state must restrain[] an individual's freedom to act to protect . . . herself through a restraint on that individual's personal liberty.'"  Id. (quoting Armijo, 159 F.3d at

1261).  "Absent involuntary restraint, . . . no duty to protect arises under the special-relationship theory[,]" id., because "'"[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on . . . [her] freedom to act on . . . [her] own behalf."'"  Id. (quoting Armijo, 159 F.3d at 1261 (quoting DeShaney, 489 U.S. at 200)).

To hold a defendant individually liable under section 1983, a plaintiff must show that the defendant was personally involved or personally participated in the alleged deprivation.  Thus, to state a claim for relief against Hunter, Johnson and/or Burgess for deprivation of substantive due process under the "special relationship" doctrine, Briggs must allege for purposes of Rule 12(b)(6) an affirmative act of restraint of Kelsey's personal liability by Hunter, Johnson and/or Burgess because it is the state official's act of restraint that "trigger[s] the protections of the Due Process Clause, not [the state official's] . . . failure to act to protect . . . [Kelsey's] liberty interests against harms inflicted by other means."  DeShaney, 489 U.S. at 200 (footnote omitted).

In the absence of both legal and physical custody, no special relationship exists, and thus, no attendant affirmative duty to protect exists.  E.g., DeShaney, 489 U.S. at 199-200.  Conversely, in those situations where the state has both legal and physical custody, a special relationship exists that imposes such a duty on the state.  E.g., Yvonne L. v. New Mexico Department of Human Services, 959 F.2d 883 (10th Cir. 1992)(state has constitutional duty to protect foster child in its legal and physical custody).

In this case, Briggs has alleged in her second amended complaint that while Smith had physical custody, DHS had legal custody of Kelsey, and Briggs has argued that DHS's

continuing legal custodial relationship with Kelsey is sufficient to establish a duty to protect under this theory. The Court disagrees.

"[L]egal custody without physical custody is insufficient to create a 'special relationship.'" A.S. v. Tellus, 22 F. Supp.2d 1217, 1221 (D. Kan. 1998); e.g., Wooten v. Campbell, 49 F.3d 696 (11th Cir. 1995)(no special relationship where state has legal custody, mother has physical custody and child injured by natural father); Clark v. City of Philadelphia, 2006 WL 2321574 (E.D. Pa. August 8, 2006)(absent physical custody, no special relationship exists). Accordingly, absent persuasive and relevant case law to the contrary, the Court finds under the circumstances of this case that Briggs' third claim for relief to the extent, if any, it is based upon the special relationship doctrine fails to state a claim for which relief may be granted.

The second exception to the general rule, as indicated, is the "danger creation" theory. Under this theory, "'state officials can be liable for the acts of third parties where those officials "created the danger" that caused the harm.'" Christiansen, 332 F.3d at 1281 (quoting Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996)). It is not enough under the danger creation theory to show that a state actor may have been aware of the danger with which an individual was confronted; a plaintiff must show that the state actor played a part in the creation of the danger or rendered that individual more vulnerable to the danger.

The Tenth Circuit has devised a six-part test to be employed when considering danger creation claims. As applied to this case, Briggs

> "'must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased . . . [Kelsey's] vulnerability to the danger in some way; (2) [Kelsey] . . . was a member of a limited and

14

> specifically definable group; (3) defendants' conduct put [Kelsey] . . . at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.'"

Id. (quoting Gonzales v. City of Castle Rock, 307 F.3d 1258, 1263 (10th Cir. 2002), rev'd on other grounds, Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005)).

"'The Due Process Clause "is not a guarantee against incorrect or ill-advised [government] decisions."'" 332 F.3d at 1282 (quoting Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)(quoting Collins v. City of Harker Heights, 503 U.S. 115, 129 (1992))). "The danger creation theory . . . focuses on the affirmative actions of the state in placing . . . [an individual] in harm's way." Currier v. Doran, 242 F.3d 905, 919 (10th Cir. 2001)).

The Court finds that the alleged failures of Hunter, Johnson and/or Burgess to cooperate, investigate, inform and protect as set forth in the second amended complaint, while they may not have reduced the danger posed by Smith and/or Porter, did not create or enhance that danger or render Kelsey more vulnerable to abuse. In this connection, the Court finds that it is important to distinguish between official conduct that intentionally and/or recklessly creates or substantially contributes to the creation of danger and a failure to act that does not decrease or eliminate a pre-existing danger.

The absence of sufficient allegations concerning part one of the Tenth Circuit's six-part test renders a potential showing of all other factors irrelevant as to the liability of Hunter, Burgess and/or Johnson based upon these allegations under the danger creation exception. Accordingly, the defendants are entitled to dismissal of the third claim for relief to the extent it is based upon these allegations.

As to Briggs' allegation that these defendants also discouraged reports of additional incidents of abuse, see Second Amended Complaint at 10, ¶ 30(b), the Court finds that it does not appear beyond doubt that Briggs cannot state a claim for relief based upon the same. By allegedly discouraging reports of additional abuse, these defendants increased Kelsey's vulnerability to abuse. E.g., Currier, 242 F.3d at 922. Upon review of the second amended complaint, the Court finds that Briggs has sufficiently alleged at this stage of the litigation not only that such conduct put Kelsey in substantial risk of an obvious or known harm, a serious and immediate harm that they consciously disregarded, but also that such conduct, when viewed in its totality, could be conscious shocking. Accordingly, the defendants are not entitled to dismissal for failure to state a claim for relief based upon this allegation under the danger creation exception.

Because the Court has determined that Briggs has sufficiently alleged a violation of the right to substantive due process guaranteed by the fourteenth amendment under the danger creation theory, the Court must consider the affirmative defense of qualified immunity raised by Hunter, Burgess and Johnson and their contention that they are immune from liability on this claim.

"The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." Elder v. Holloway, 510 U.S. 510, 512 (1994). If a defendant asserts this defense, a plaintiff must show both that the defendant's actions violated a constitutional right and that the right allegedly violated was clearly established at the time the defendant acted. E.g., Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this connection, the Court must first decide whether the allegations taken in the light most favorable to Briggs show that the conduct of these three defendants violated a constitutional right. As stated, the Court has determined that the particular theory of the danger creation exception–discouraging reports of additional incidents of abuse, thereby rendering an individual more vulnerable to that abuse, constitutes a violation of the right to substantive due process.

Accordingly, the Court must also then decide whether the contours of that right were "'sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'" Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the [United States] Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)(citation omitted).

DeShaney and its progeny clearly established prior to the events giving rise to this lawsuit that a state actor could be liable if his or her affirmative acts created or enhanced an individual's vulnerability to private violence. Moreover, the particular application of the danger creation theory upon which Briggs has relied–discouraging reports of additional incidents of abuse, had been sufficiently recognized in Currier, decided by the Tenth Circuit in 2001, to provide "fair warning," Hope v. Pelzer, 536 U.S. 730, 740 (2002), to state actors that similar conduct could deprive an individual of a constitutional right. Accordingly, the Court finds that reasonable officials in these three defendants' position would have understood that their conduct could give rise to a claim under the danger creation theory. Thus, these defendants are not entitled to qualified immunity.

Based upon the foregoing, the Court

(1) GRANTS the Motion to Dismiss Second Amended Complaint [Doc. 41] filed on August 25, 2006, by defendants DHS, Hendrick, Johnson, Hunter and Burgess to the extent that these defendants

    (a) have sought dismissal of the first and second claims for relief in their entirety as set forth in the second amended complaint and thus, have sought dismissal of DHS and Hendrick from this action;

    (b) have sought dismissal of the third claim for relief to the extent, if any, it is based upon the special relationship theory of liability and Briggs' attempt to impose liability under that theory on Hunter, Johnson and Burgess in their individual capacities; and

    (c) have sought dismissal of the third claim for relief to the extent it is based upon the danger creation theory of liability and Briggs' attempt to impose liability under that theory on Hunter, Johnson and Burgess in their individual capacities based upon allegations that these defendants failed to inform, protect, investigate and cooperate; and

(2) DENIES the Motion to Dismiss Second Amended Complaint to the extent Johnson, Hunter and Burgess

    (a) have sought dismissal of the third claim for relief to the extent it is based upon the danger creation theory of liability and Briggs' attempt to impose liability under that theory on these three defendants in their individual capacities based upon allegations that they discouraged reports of additional incidents of abuse; and

(b) have sought a finding by the Court that they are entitled to qualified immunity on that theory of liability.

ENTERED this 31st day of January, 2007.

*[signature]*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE